## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| **FELIX ESPOSITO** | ) | |
| **and ACCESS WITH SUCCESS, INC.,** | ) | |
| **Plaintiffs** | ) | **CIVIL ACTION NO.: 05-10384 DPW** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **HYATT CORPORATION,** | ) | |
| **Defendant** | ) | |
| | ) | |

## AMENDED COMPLAINT

This is an action seeking injunctive, declaratory and equitable relief pursuant to Title III of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq*. The plaintiffs, Felix Esposito and Access with Success, Inc. ("AWS") bring this cause against Hyatt Corporation ("Hyatt") and allege as follows:

## PARTIES

1.     The plaintiff, Access with Success, Inc., ("AWS") is a non-profit corporation organized and existing under the laws of the Commonwealth of Massachusetts.  Its members are able-bodied individuals and qualified individuals with disabilities as defined by the ADA. Its members include the plaintiff, Felix Esposito.

2.     G. David Iverson, age 60, is also a member of AWS.  Mr. Iverson is a T8-9 complete paraplegic secondary to a gunshot wound.  He relies completely upon a wheelchair for ambulation.

3.     Peter A. Spalluto, age 60, is also a member of AWS, Inc.  He is quadriplegic due to a swimming pool diving accident in 1966.  He always uses a wheelchair to ambulate.

4.     Mr. Scott M. Frotton, age 43, is a founding member of AWS.  Mr. Frotton has T7

paraplegia secondary to a spinal cord injury sustained in a construction site accident in 1998. He has a complete loss of sensory and motor function from his chest down. His condition is permanent. He always uses a wheelchair to ambulate.

5.      Mr. Francis DeVito, age 76, is a Marine veteran of the Korean War veteran and a member of AWS. In 1953, he was injured in combat by a grenade and gunfire in an ambush attack. His wounds were so severe that it was medically necessary to amputate his left leg above the knee. He requires the use of ambulatory devices for mobility, including a prosthetic leg and a crutch, when necessary, in order to walk.

6.      Raymond J. Aziz, age 64, is a member of AWS. He has mobility impairment secondary to adult onset of diabetes. He requires the use of leg braces for ambulation.

7.      Norman P. Crescimano, age 44, is a member of AWS. He has multiple sclerosis and always uses a wheelchair for ambulation.

8.      Mr. Frank Salafia, age 70, is a member of AWS. He is hearing impaired and has a loss of vision in one eye.

9.      Amylee O'Beirne, age 25, is a founding member of AWS. She has had rheumatoid arthritis since early childhood. She frequently uses a wheelchair for ambulation.

10.     Dino N. Theodore, age 46 is a member of AWS. He suffered an accidental gunshot wound to the T7 vertebrae in 1981. He is paraplegic. He always uses a wheelchair.

11.     John Pattavina, age 54, is a member of AWS. He is globally aphasic due to a left sided massive stroke that occurred in 2002. He is right side paralyzed and sometimes requires the use of a wheelchair for ambulation.

12.     Peter DiPalma, age 56, is a member of AWS. Mr. DiPalma is quadriplegic.

13.     Robert Brearley, age 52, is a member of AWS. He suffered a traumatic spinal cord injury

in 1980.  He always uses a wheelchair.

14.     Robert L. Smith, III, age 52, is a member of AWS.  He always uses an electric wheelchair due to the combined problems of muscular dystrophy and a traumatic pelvic fracture in 2000.

15.     Jeffrey R. Smith, age 26, resides at 3040 Cranberry Highway, Unit 45, East Wareham, MA  02558.  Mr. Smith relies completely upon an electric wheelchair for ambulation. He suffered a brain injury in a car accident on March 23, 1997 when he was sixteen years old. He is a qualified individual with disabilities under the ADA.

16.     All of the above-named members of AWS are qualified individuals with disabilities within the meaning of the ADA and all other applicable federal and state statutes.

17.     AWS is a civil rights group organized by individuals with disabilities to advocate for disabled persons' integration into society and equal access to all services, activities, programs, resources and facilities available to non-disabled persons.  Its members are predominately, but not exclusively, individuals with various physical disabilities impairing mobility, vision and hearing.  One of the primary purposes of AWS is to assure that places of public accommodation are accessible to, and usable by persons with disabilities.  Title III of the ADA permits private individuals to bring lawsuits in which they can obtain court orders to stop discrimination on the basis of disability.

18.     AWS and its members have suffered direct and indirect injury as a result of the defendants' actions or inactions as described herein.  AWS also has been discriminated against because of its association with its members and their claims.  The defendant's failure to comply with the ADA adversely affects the organizational purpose of AWS.

19.     The protections of the ADA extend to persons who are discriminated against because of their relationship or association with persons who have a known disability. 28 C.F.R. 35.130(g).

This may include family, friends, and persons who provide care for persons with disabilities. *Doe v. County of Centre*, 242 F.3d 437, 447 (3rd Cir. 2001). Organizations have representational standing to file claims under the ADA if the organization alleges that one of its members has been injured by a proscribed act. *Swanson v. City of Lowell*, 2002 U.S. Dist. LEXIS 14389 (D. Mass. 2002).

20.     The plaintiff, Felix Esposito, resides at 5571 Lake Side Drive, #102, Margate, Florida, 33063. Mr. Esposito suffers from neurological conversion reaction, a neurological illness that makes him dependent on a wheelchair for ambulation. He is a qualified individual with disabilities under the ADA and all other applicable federal and state statutes. Mr. Esposito has friends and acquaintances in Boston with whom he visits on a regular basis.

21.     The defendant, Hyatt, is a foreign corporation organized and existing under the laws of the state of Delaware and has been registered to do business Massachusetts since November 1974.

22.     Hyatt has a principal place of business at 200 West Madison Street, 41st Floor, Chicago, IL 60606.

23.     Hyatt develops, acquires, owns and manages hotel properties all over the world.

24.     One of the hotel properties that Hyatt owns is known as AmeriSuites Boston/Medford, 116 Riverside Drive, Medford, MA 02155 (hereinafter, "AmeriSuites").

25.     On information and belief, Hyatt acquired ownership of the real property at 116 Riverside Drive, Medford, MA 02155 on or about August 28, 2006.

26.     On information and belief, AmeriSuites will be renamed "Hyatt Place Boston/Medford" in the spring of 2007.

27.     At http://www.viahotelsboston.com/hotel-information-136637.asp AmeriSuites is

described as follows:

> "The AmeriSuites in Medford is a charming, first class property located just 7 miles from the Logan International Airport and only 4 miles from exciting, historic Boston. The AmeriSuites in Medford offers all guests the perfect blend of high quality service and comfortable accommodations at affordable prices that make AmeriSuites one of the most popular hotel chains in the world; and, this one of the most popular hotels in its class. With over one hundred and fifty well appointed guest rooms, and a full business/conference center, this is the perfect choice for both business and pleasure travelers; all of whom receive the warm, service with a smile that the most discriminating travelers demand.
>
> Each spacious, comfortable guest suite at the AmeriSuites in Medford is tastefully decorated, and fully equipped to meet the needs of the modern traveler. All guest rooms offer a host of modern amenities, including such convenient features as coffee/tea makers with complimentary coffee, modem/data port connections, and irons with ironing boards. This hotel also offers a complimentary Bountiful Breakfast Buffet; and has an onsite fitness facility for health minded guests. The hotel staff is always ready to meet the needs of every guest; and, this property is minutes to fine dining, shopping and entertainment."

28.    At http://www.viahotelsboston.com/hotel-information-136637.asp AmeriSuites is also advertised as being "Handicap Accessible."

29.    As alleged more specifically below, Amerisuites is not "Handicap Accessible," nor is it "fully equipped to meet the needs of the modern traveler," if that traveler happens to be in a wheelchair.

30.    AmeriSuites is a place of public accommodation subject to the requirements of the Title III of the ADA.

31.    The defendant, Hyatt, is a private entity that owns a public accommodation as defined in the Title III of the ADA, 42 U.S.C. § 12181(7)(E).

32.    The defendant, Hyatt, is a private entity that operates a public accommodation as defined in Title III of the ADA, 42 U.S.C. § 12181, and is an entity that affects commerce and that owns a public accommodation as defined in 42 U.S.C. § 12181(7)(E).

## SYNOPSIS OF A CAUSE OF ACTION UNDER THE ADA

33.    Congress enacted the ADA in 1990 to remedy widespread discrimination against disabled individuals. In studying the need for such legislation, Congress found that "historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem." 42 U.S.C. § 12101(a)(2).

34.    Congress found that the many forms such discrimination takes include "outright intentional exclusion" as well as the "failure to make modifications to existing facilities and practices." 42 U.S.C. § 12101(a)(5).

35.    After thoroughly investigating the problem, Congress concluded that there was a "compelling need" for a "clear and comprehensive national mandate" to eliminate discrimination against disabled individuals, and to integrate them "into the economic and social mainstream of American life." S. Rep. No. 101-116, p. 20 (1989); H. R. Rep. No. 101-485, pt. 2, p. 50 (1990).

36.    The ADA provides, "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

37.    In order to make a prima facie case under Title III of the ADA, a plaintiff must prove that (1) he has a disability, (2) defendant's facility is a place of public accommodation, (3) and he was denied full and equal treatment because of his disability.

38.    The ADA's public accommodations provisions also permit an individual to allege discrimination based on a reasonable belief that discrimination is about to occur.

39.     A plaintiff with a disability need not engage in the "futile gesture" of attempting to gain access to each and every feature of a facility or place of public accommodation where access barriers are known to exist and where the owner or operator does not intend to comply with the provisions of the ADA. 42 U.S.C. § 12188(a)(1).

40.     This case arises out of the defendant's unlawful practice of denying meaningful and equal access to the facilities, goods and services offered at AmeriSuites to persons with disabilities, such as the plaintiff, Felix Esposito.

## JURISDICTION AND VENUE

41.     The Court has primary jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and § 1343 in that this action arises under the laws of the United States and the defendant is subject to personal jurisdiction.

42.     Venue is proper in this Court under 28 U.S.C. § 1391, the claim having arisen in the District of Massachusetts.

## COUNT I - VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

43.     On September 7, 2004, Mr. Esposito was a guest at AmeriSuites; he was denied meaningful and equal access to the facilities, goods and services of AmeriSuites due to its lack of accessibility and a lack of compliance with the ADA's requirements regarding the removal of architectural barriers to access by persons with disabilities.

44.     Mr. Esposito wishes to patronize AmeriSuites in the future because of its modest cost and proximity to Logan Airport; he reasonably expects that he will return to AmeriSuites, but he continues to be denied meaningful access to AmeriSuites due to the architectural barriers to wheelchair access that continue to exist there.

45.    The defendant, Hyatt, has discriminated against the plaintiff and continues to discriminate against the plaintiff by denying him access to, and full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of AmeriSuites as prohibited by 42 U.S.C. § 12182(b)(2)(A)(iv) and by failing to make alterations in such a manner that, to the maximum extent feasible, the altered portions of the facility are readily accessible as required by 42 U.S.C. § 12183(a)(2).

46.    Pursuant to the mandates of 42 U.S.C. § 12134(a), on July 26, 1991, the Department of Justice, Office of the Attorney General, promulgated federal regulations to implement the requirements of the ADA.  The regulations are codified at 28 C.F.R. Part 36.  The regulations are known as the "ADAAG's" or the "Americans with Disabilities Act Accessibility Guidelines."

47.    With respect to altered facilities under the ADA, discrimination constitutes "a failure to make alterations in such manner that, to maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs."  42 U.S.C. § 12183(a)(2).

48.    All alterations that could affect the usability of a facility must be made in an accessible manner to the maximum extent feasible.  For example, if during renovations a doorway is being relocated, the new doorway must be wide enough to meet the new construction standard for accessibility.  When alterations are made to a primary function area, such as a restaurant or a lounge of a hotel lobby, an accessible path of travel to the altered area must also be provided. The bathrooms, telephones, and counters serving that area must also be made accessible.  These additional accessibility alterations are required to the extent that the added accessibility costs do not exceed 20% of the cost of the original alteration.

49.    On information and belief, AmeriSuites has undergone renovations since January 26, 1992 such that including accessible features was mandatory, but the property owner did not include accessibility features in its renovations.

50.    Even if AmeriSuites never was an altered facility within the meaning of the ADA, the architectural changes requested by the plaintiffs herein are of the kind that would be "readily achievable."

51.    42 U.S.C. § 12182(2)(A)(iv) provides that "discrimination" under the ADA includes "a failure to remove architectural barriers, and communication barriers that are structural in nature, in existing facilities . . . where such removal is readily achievable."

52.    Under 42 USC § 12181(9) the term "readily achievable" means "easily accomplishable and able to be carried out without much difficulty or expense."

53.     In determining whether an action is readily achievable, factors to be considered include:

    (A) the nature and cost of the action needed under this Act;

    (B) the overall financial resources of the facility or facilities involved in the action; the number of persons employed at such facility; the effect on expenses and resources, or the impact otherwise of such action upon the operation of the facility;

    (C) the overall financial resources of the covered entity; the overall size of the business of a covered entity with respect to the number of its employees; the number, type, and location of its facilities; and

    (D) the type of operation or operations of the covered entity, including the composition, structure, and functions of the workforce of such entity; the geographic separateness, administrative or fiscal relationship of the facility or facilities in question to the covered entity.

54.    In this case, the financial resources to be considered would be those of Hyatt and AmeriSuites, not of AmeriSuites only.

55.    The ADA Title III Technical Assistance Manual provides at III-4.4200, "If the public accommodation is a facility that is owned or operated by a parent entity that conducts operations

at many different sites, the public accommodation must consider the resources of both the local facility and the parent entity to determine if removal of a particular barrier is 'readily achievable.' The administrative and fiscal relationship between the local facility and the parent entity must also be considered in evaluating what resources are available for any particular act of barrier removal."

56.     During his stay at AmeriSuites, Mr. Esposito observed, encountered, and suffered discrimination as a result of architectural barriers to wheelchair access there.

57.     Mr. Esposito intends to return to AmeriSuites as soon as the architectural barriers to wheelchair access are removed, possibly sooner.

58.     Mr. Esposito would like to be able to stay again as an overnight guest at AmeriSuites, but he does not wish to engage in the futile gesture of doing so and of attempting to gain access to each and every feature of AmeriSuites because he knows that barriers to wheelchair access exist there and Hyatt has not and does not intend to remove architectural barriers to access there.

59.     Mr. Esposito has suffered an injury in fact as a result of the defendant's non-compliance with the ADA.  His desire to return to AmeriSuites creates a real and immediate threat of future injury.

60.     The injunctive relief requested below will redress Mr. Esposito's injury.

61.     Mr. Esposito was a guest at AmeriSuites in Room 812 on September 7, 2004.

62.     Upon arriving for his stay on September 7, 2004, Mr. Esposito observed and encountered the architectural barriers to access set forth below.

63.     The parking area had an insufficient number of spaces designated for disabled use, in violation of Sections 4.1.2 and 4.6.1 of the ADAAG.

64.    There is no accessible route from the parking areas to the facility in violation of Sections 4.3.4 of the ADAAG.

65.    The designated accessible spaces do not have clear and level access aisles in violation of Sections 4.1.2 and 4.6.3 of the ADAAG.

66.    There is no accessible route from the parking areas to the facility, in violation of Sections 4.3.2, 4.6.2 and 4.6.3 of the ADAAG.

67.    The ramps provided from the parking areas to the facility have slopes, side slopes and/or cross slopes in excess of the limits prescribed in Section 4.8 of the ADAAG.

68.    The signs designating the disabled use spaces are not posted at sufficient heights, in violation of Section 4.6.4 of the ADAAG.

69.    The doors at several building entrances are fitted with inaccessible hardware in violation of Section 4.13.9 of the ADAAG.

70.    The stairs do not comply with the standards prescribed in Section 4.9 of the ADAAG.

71.    There are protruding objects present at AmeriSuites in violation of Section 4.4 of the ADAAG.

72.    The water fountains at AmeriSuites do not meet the prescribed height and/or knee clearance requirements for use by disabled patrons in violation of Section 4.15 of the ADAAG.

73.    There are vending machines for public use at AmeriSuites without the required disabled use elements in violation of several Sections of the ADAAG.

74.    There is insufficient clear floor space to access goods or services at AmeriSuites in violation of several Sections of the ADAAG.

75.    The rooms designated as wheelchair and disabled accessible do not provide a 36-inch clear floor space on both sides of the bed in violation of Section 9 of the ADAAG.

76.    The storage areas provided do not have the clear floor space prescribed in Sections 4.2 and 9 of the ADAAG.

77.    The designated accessible rooms have controls and dispensers outside the required ranges violating Sections 4.2 of the ADAAG.

78.    The designated accessible rooms are not equipped with proper door hardware violating Sections 4.13.9 and 9 of the ADAAG.

79.    The sinks in the lavatory provided in the designated accessible rooms do not meet the requirements prescribed in Sections 4.24 of the ADAAG.

80.    The clear floor space provided in the lavatory of the designated accessible rooms violates the provisions of Sections 4.18.3 and 4.22 of the ADAAG.

81.    The defendant has failed to remove barriers to access by persons with mobility disabilities at AmeriSuites where such barrier removal is readily achievable.

82.    The defendant has failed to provide necessary auxiliary aids and services at AmeriSuites where provision of such auxiliary aids and services would not pose any undue economic or architectural burden.

83.    The defendant has failed to modify policies and procedures at AmeriSuites where required to ensure equal access for persons with disabilities.

84.    On information and belief, the plaintiffs allege that there are other violations present at AmeriSuites Boston Medford that will be more fully alleged upon discovery and further inspection.

85.    The defendant has not removed barriers to wheelchair access to the extent readily achievable nor has the defendant complied with accessibility standards to the maximum feasible.

86.     The defendant has also, by maintaining such barriers, failed to comply with ADA and access requirements for areas of new construction or alteration.

87.     All alterations that could affect the usability of a facility must be made in an accessible manner to the maximum extent feasible.

88.     The actions and initiatives which the defendant has failed to undertake in order to make AmeriSuites accessible to persons with disabilities are actions and initiatives that would be readily achievable, required by law, and would greatly assist persons with mobility disabilities at minimal expense to the defendants.

89.     The defendant's conduct constitutes ongoing and continuous violations of the ADA and, unless restrained from doing so, the defendants will continue to violate the ADA.  Said conduct, unless enjoined, will continue to inflict injuries for which the plaintiffs have no adequate remedy at law.

WHEREFORE, The plaintiffs request that the Court will order the defendant to alter AmeriSuites to make it readily accessible to and useable by individuals with disabilities to the extent required by the Americans with Disabilities Act and Subpart E of 28 C.F.R. Part 36 and award the plaintiffs appropriate attorney's fees and costs of this suit as provided by 42 U.S.C. § 12205.

Respectfully submitted,
The Plaintiffs, ACCESS WITH SUCCESS,
INC. and FELIX ESPOSITO,

By their Attorneys,


/s/Nicholas S. Guerrera
Nicholas S. Guerrera, BBO#551475
Shaheen Guerrera & O'Leary, LLC
Jefferson Office Park

820A Turnpike Street
North Andover, MA 01845
(978) 689-0800

/s/ Ann Marie Pattavina
Ann Marie Pattavina, BBO#565910
Law Office of Ann Marie Pattavina
Two Dundee Park – 3rd Floor
Andover, MA 01810
(978) 247-7188

/s/Michael J. Bellanti
Michael J. Bellanti, BBO#645405
Law Office of Michael J. Bellanti
Two Dundee Park – 3rd Floor
Andover, MA 01810
(978) 247-7188

**UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| **FELIX ESPOSITO** | ) | |
| **and ACCESS WITH SUCCESS, INC.,** | ) | |
| **Plaintiffs** | ) | **CIVIL ACTION NO.: 05-10384** |
| | ) | **DPW** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **PRIME HOSPITALITY** | ) | |
| **CORPORATION,** | ) | |
| **Defendant** | ) | |
| | ) | |

## NOTICE OF AMENDED COMPLAINT PURSUANT TO RULE 15 (a)

NOW COME the plaintiffs, Felix Esposito and Access with Success, Inc., by and through counsel, who hereby give notice that they have amended their Complaint by deleting Prime Hospitality Corporation as the defendant in this action.

This amendment is made as a matter of right pursuant to Fed. R. Civ. P. 15 (a). Prime Hospitality Corporation has filed no responsive pleading. The plaintiffs have amended their complaint because they have received information that Hyatt Corporation purchased the hotel property in question on August 28, 2006. As such, Prime Hospitality Corporation is no longer a necessary party to this action. The owner of the Amerisuites Boston/Medford Hotel at 116 Riverside Drive in Medford, Massachusetts is Hyatt Corporation. The plaintiffs have amended their complaint by deleting all references to Prime Hospitality Corporation and by substituting Hyatt Corporation as the proper defendant.

Respectfully submitted,

The Plaintiffs, FELIX ESPOSITO

and ACCESS WITH SUCCESS,
INC.,

By their Attorneys,


/s/Nicholas S. Guerrera
Nicholas S. Guerrera, BBO#551475
Shaheen Guerrera & O'Leary, LLC
Jefferson Office Park
820A Turnpike Street
North Andover, MA 01845
Dated: October 25, 2006                    (978) 689-0800